May it please the Court, Sean Connolly with David Nielsen for the Plaintiffs. These cross appeals involving a railroad's interest under the 1875 Right-of-Way Act are controlled by the Supreme Court's 2014 decision in Brandt. That 8-1 decision, authored by Chief Justice Roberts, unequivocally held that railroads under the 1875 Act acquire only a simple and non-possessory easement. The District Court, therefore, was correct in invalidating, on a prospective basis, leases whereby Union Pacific was requiring plaintiffs to pay to possess their own land. The Court should have gone further, however, and also ordered rescission and restitution of payments made under past leases. Well, is restitution really, is that a fit? Because a benefit was received. Your Honor, no benefit was received. You pay the lease and you have the benefit of the use of the land. And that all happened. That wasn't provided by the leases. That was provided by operation of law. And that's, I guess, the first issue being Brandt. We had that right. And under a mistaken belief, and under the representations by Union Pacific in 1997, that we did not have that right. This is page 216, the letter of the appendix, where Union Pacific in 1997 said, you have no right to possess the land under the law. And they cited two pre-Brandt cases. Under the law, we have the exclusive right to possess the land. Now, so, and that's wrong, we know, under Brandt. And I'm happy to address the merits. I think Your Honor, on the first question, I think Your Honor's question jumped ahead. And I'm happy to be at that point in terms of why do we. So the word rescission, and so that's where I went. Yes, and that's our second, and I'm happy to be there. So why do we get rescission? The first count of our complaint, and it was a state court complaint removed to federal court, count one was a claim for rescission based on mutual mistake. And the mistake of, we did not, in our bundle of sticks, have that possessory right as a fee owner of that land. We did not have a right that's a classic stick in that bundle of a fee owner's bundle of rights. That was a mistake induced by Union Pacific, and we had a right, we submitted and pled in count one, to rescind payments made on that mistaken belief. Now, the district court denied that for two reasons. One, untimely, the district court ruled. Number two, redundancy. I think Your Honor's question goes to Union Pacific, I think has jettisoned any redundancy. There's really nothing to that. I think they've effectively conceded that. Still argue timeliness. They've also argued, you can't complain because you had quiet enjoyment. Now, that claim is not only waived, not only forfeited, that's waived, because they firmly told the district court that this quiet enjoyment doctrine, that hey, you got what you paid for, you got 10 years of peace, and we never came and interrupted your enjoyment. They admitted in district court that we did not raise that as a defense to the mistake claim, because it doesn't apply under Utah law. And they're correct, that concession was correct. So they've not only forfeited that, they've waived that claim. So in terms of the two reasons the district court offered, one, redundancy. I don't think they defend that. There's nothing redundant. The district court prospectively invalidated the leases, but we wanted more than that. And it's nothing redundant to say, give us retroactive rescissionary relief. No redundancy. The district court said time bar. And under the Utah statute, I think it's Utah code 78B23053, provides a three-year statute of limitations in a claim mistake upon discovery of the mistake. Now, by its plain language, it doesn't say when you discover it, it should have known. But let's assume that it's constructive knowledge. And there's some dip in the Utah cases that even though the Utah court, probably among all courts in this country I'm aware of, with the Chief Justice Lee, I think it's Chief Justice, it's a very plain-meaning court. The statute's a discovery, but let's assume it means not just actual discovery, but it should have known. There are three reasons we submit why you cannot impose constructive knowledge on our layperson plaintiffs. Based on, the district court said you should have known, not only based on Brandt, which came after, but you should have known based on Great Northern, a 1942 Supreme Court decision that was a precursor to Brandt. Obviously, it's a simple easement. Three reasons we submit you can't do that. First of all, constructive knowledge, and this is Judge McKay's opinion for this court in 1980, I guess, coming up on 40 years ago in Amico, said constructive knowledge is a doctrine that should be strictly construed. It's not something you should impose in a broad way. And the federal district court in South Dakota, the Winter case we cite, is the only case, I think, that has said this and really addressed it, and said you really cannot hold a layperson chargeable with should have known of a decision in a related case, or in an unrelated case, in a should have known the law. That's an incredibly expansive doctrine. I mean, everyone is charged with knowing the law. I mean, the fact that you have to search so far to find a, what, district court case in South Dakota? I mean, what does that tell you? I mean, that is the nature of the law. You are charged with knowing the law. You're relying on Brandt now, and so what? Brandt is something that your layperson client would have known about as well, or not known about? They wouldn't have, actually. They knew about it. Your Honor, you know what? And this is another argument that Union Pacific makes. The mistake, really, is really a question of fact. What did we possess? Did we possess a bundle of sticks? Did this possessor right? As a fee owner, do we possess that? And they say, you should have known based on Great Northern that you did. In 2014, while we're still operating under the mistaken assumption that we don't possess our own land, 2014, the federal government is arguing to the Supreme Court that Brandt's kind of a one off, that Brandt doesn't really hold what it does. It only applies to subsurface. It doesn't really, I'm sorry, that Great Northern doesn't really apply the way that Brandt is arguing that. Now, the Supreme Court rejected that and said, Great Northern is not a one off. It's not limited to subsurface rights. The reasoning is broad enough to cover this, and we therefore follow it. But I would say point one is that a layperson should not be charged with constructive knowledge that they don't own this bundle of stick, because Great Northern, which the federal government is still arguing in 2014, doesn't really cover this situation. On that one case, what is the basis for some notion of implying a layperson standard for chargeability of the law? I mean, in other words, cutting against one's ability to know what the law is. The law is what the law is. Mr. Connolly, I know you've seen a lot of convoluted statutes, and a layperson is charged with knowing those statutes. In a criminal context, certainly, when you don't have a split. But I'm talking in this civil context. And I think the closest analog, Your Honor, is probably qualified immunity. When you have an officer trained in the law, more sophisticated than our laypeople, officer trained in the law said, you violated rights. And they say, yeah, maybe we did, but they weren't clearly established. And we could not reasonably have known about that. Therefore, we're entitled to qualified immunity. I think that's close. But rather than debate that, I think that's my first point. Second point is, assuming that we're chargeable with knowledge of the law, the second point is, the point I alluded on, is that Great Northern did not really clearly establish, certainly in the way that a qualified immunity. If I'm a police officer, represent a police officer, and they said, you violated these people's rights under Great Northern, I would say that, no, there was still room for debate. It was not that clearly established. So I think point two is, even if we're chargeable with knowledge of the law, the law was not so clearly established that it was unreasonable for us to not know that we didn't have this special right. The third one is that this is Union Pacific. Union Pacific is saying, and they're coming to this court. And they're going to come, and we haven't talked about this first point very well, because hopefully, Grant so clearly decides it now. They're still coming to this court. And they're going to argue that, no, there's no mistake here. In fact, these leases were based on a correct assumption, that we, indeed, Union Pacific, have the sole possessory rights or sole occupancy rights. Well, they have a right of way. I think that's really the key of the case. And maybe we should move to that before we get too far afield. That is the question, is really, what degree of exclusivity does the railroad have? Is it a possessory interest? Or is it a right of way for use for explicit reasons? That is, railroad purposes. Yes, and Your Honor, that's the question, I believe, is answered squarely by Brandt. Brandt said it's a simple easement. And Brandt said, we're going to look to, well, common law principles of easements, and particularly, as articulated in Restatement 3rd of Servitudes, Section 1.2. And then in footnote 4 of Brandt, 105 note 4, they said, traditional easement, and conversely, what does the fee owner retain? That was Brandt. We're basically the Brandts in this case, without an abandonment. What does the fee owner retain? The fee owner retains all the bundle of fee ownership rights, of fee rights, subject to an easement. So yes, there is no. Who is the fee owner of this property? Heber Rentals. And I think they're the fee owner. They're the fee owners, and LKL is their sister company. And LKL is leasing from Heber. So if the railroad has the right of way for exclusive use, and arguably, maybe they don't have possessory interest, how can they lease it to you? And how beyond that can you have a possessory interest? Well, I think, too, there's a lot of premises in that question. I think Brandt answers them all, though. The railroad, manifestly, is not a fee owner. They lost that in Great Northern, and Brandt slammed the door shut on that. Under the 1875 Act, the railroad is a mere easement holder. Now, we are the owner, and we are the only freeholder state. How did that come to you? Give me the. Yeah, well, there's an interesting history lesson. The lesson starts in 1898, when the federal government conveys school lands to the state of Utah under the Enabling Act, and then through a series of deeds. And the original owners of our lots were John Nordstrom in 1898 and the Vineyard School District. A series of deeds, obviously, a lot of intermediaries. We have four deeds and one court order that give us five interests in the land that we own adjacent to the fenced-in railroad track, running from Provo, Utah, up to Salt Lake. And we're south, right about Orem. So we are, and there's some dispute, and I don't want there to be any confusion on this. The Union Pacific, that has no standing to really challenge our fee ownership, has said, if we remonument the lands, then maybe, actually, some of your land should be moved east, further away from the tracks, and into the state highway, actually. And that, therefore, maybe the state still owns part of these lands. That's not an issue. We believe they have any standing to raise. We've been in this land since 1970s, 78, I think we acquired the final piece of property we built in 1979. Nobody's ever challenged our fee ownership. Let me ask you a question about the abatement, not abatement, abandonment issue. What standard of review do we use in evaluating the district court's determination regarding abandonment? The close case we found is the Ellis case, and I argue that was DeNovo. I think there's some argument that that could be a deferential review. Fact finding, the trick is. Use of discretion, in that sense? Pardon me? Use of discretion, in that sense? Are clearly erroneous. It's tricky, though, because this is a summary judgment. We're coming up on summary judgment, which is DeNovo, obviously. The finding of abandonment, I think there's some. Ellis overturned it. I think Ellis said it was DeNovo review of the ultimate issue. I think there's some language there that said it may be subject to the clear error standard. I think we'd meet. So I think there's some confusion. I think that fairly red, I first read as DeNovo. They point out it's clear error. I think, in fairness, that it's closer to clear error standard. It is clear error. I mean, I was looking at it again last night. I mean, it's pretty muddy. I mean, what's the cleanest part of the record that makes it? I mean, it seemed to me pretty muddy as to what was going on. OK, here's the cleanest part of the record I can tell you, Your Honor, is that after three years of litigation, when the judge is going to the merits, and we have a client that doesn't have the resources in the Union Pacific. They have a family business that's been successful for three decades or more. But this is David, and we're fighting Goliath. So we're saying, please, Judge, get to the merits. And the judge is going to trial. We've had experts testify, Daubert hearings. They're appending some of the judgment motions. Judge says, refile the motions. We refile on, I think it's January 14 of this year. And then they respond in January 28. Those are the motions. In that motion, we say, if you decide we have possession, we'll win. And there's a domino effect. And we should get that and rescission. And if we get that, then the other claims may be moved. But they're predicated on us winning on this. And that's the point. If I go back and look, is it clear that it was conditional? Because the way that played out in the transcript suggests exactly that was your objection. I think that's the cleanest place to look in that January 14, 19 motion, where we made it conditional. And we said, if we're going to lose possession, we lose everything else. So we said, possession is the key. Decide possession without all these other issues. And if we win on possession and win on rescission, we don't care about anything. And that still remains the case. If I may save my many minute. Thank you. Thank you. Thank you, Your Honors. May it please the Court. My name's Scott Ballinger here for the Railroad, the Union Pacific. The core 1875 Act issue here is just so important to the integrity of the National Rail Network that I'd like to focus my argument there, if I may. The Supreme Court explained 120 years ago in New Mexico versus US Trust that when a railroad right-of-way is granted, even in easement form, it always conveys, quote, the exclusive use and control of the surface, such that the fee is ordinarily of little or no value unless the right-of-way is underlayed by a quarry or a mine. On the specific question of whether the easement holder has the right to eject the fee owner from the right-of-way if the fee owner intrudes into the right-of-way, the Supreme Court quoted a recent decision from the California Supreme Court, Railroad Company versus Burr, quote, it is true that the strip of land now actually occupied by the roadbed and telegraph line may be only a small part of the right-of-way. But this fact is of no consequence. The company may, at some time, want to use more land for sidetracks or other purposes, and it is entitled to have the land clear and unobstructed whenever it shall have occasion to do so. Now, the basic error that plaintiffs and the district court have made in this case is to confuse that line of law, that the railroad always has the right to have the right-of-way clear and unobstructed for when it may need it, with a separate body of law, which is about when the railroad can authorize third-party business and construction operations in the right-of-way. That body of law says that if the railroad wants to authorize some third-party business in the right-of-way that will further burden the servient estate on top of just the grant of the right-of-way itself, then that sometimes requires a railroad purpose for the authorization of that additional third-party activity. And what LKL has here has nothing to do with the railroad purpose, right? That's right, Your Honor. But this isn't a railroad project that the railroad is trying to do. So what's the end result here? They tear down their building and tear up their asphalt behind the buildings? Well, Your Honor, what happens in these circumstances? I just want to be clear about the timeline here, because this was not a project that the railroad invited. They came onto a dedicated railroad corridor that Congress dedicated in perpetuity and exclusively to the railroad. Back in the 1870s, this rail line was actually built before the 1875 Act was finally passed by Congress, and then subsequently ratified into law by the 1875 Act. It was built in the middle of the desert, when there was nothing else here. Congress exercised its power over its own land to set aside this corridor in the middle of the desert forever for railroad purposes. Everyone who came along later took their rights, whatever they are, subject to that right-of-way, which is clearly recorded on the right-of-way. Now, the railroad has the absolute right, under all of the case law, going back 150 years, uncontradicted right, to have that right-of-way be clear and unobstructed for the railroad's needs. But this is a railroad need that area now? The railroad has an absolute right to have this entirety of the right-of-way. Clear and unobstructed for its needs, but does it have a need to use it now? The railroad is using it. The railroad is running trains up and down this right-of-way every single day. Not through the area where that piece of property is, right? Well, Your Honor, this court in the Boise Cascade decision and the Supreme Court in many other decisions have said over and over again that no court, no state, no private party, can question Congress's conclusive determination that the railroad needs the entire 200 feet for the present and future needs of the railroad. So the point is not whether it's using it now, but whether there is a potential in the future that it may need that space? Your Honor, the railroad is always- Is that right? I don't believe so, Your Honor. The railroad is always using the entirety of these corridors as a buffer, if nothing else. So even when it's not using it, it's using it? The railroad is using this corridor every day, Your Honor. There are trains running up and down this way. There's trains on the track. But what about this disputed area that we're addressing in this case? Your Honor, there is no such thing as the disputed area and the operational area. There is one corridor. It is a single thing. That is the holding of the Boise Cascade case. So you're using all of it every day, all the time? Absolutely, Your Honor. Now, this happens sometimes, because the railroad is responsible for policing these corridors and making sure nothing dangerous is happening in them. And there's no hazardous materials too close to the tracks and things like that. The railroad has to pay people whose job it is to make sure that these corridors are being appropriately used. Well, how did we get to the leasing, then, to these individuals, into this company? Your Honor, what happens? When the railroad finds an incursion into the statutory right-of-way like this, the railroad has the right to demand that the right-of-way be clear and unobstructed. But the railroad wants to be a good neighbor. And so often, it instead tries to do what it did in this case, which is negotiate a lease with the encroaching landowner that has terms and conditions that allow the railroad to- There went away your exclusive right. There went away your opportunity to use the full space every day, all the time. Well, Your Honor- Now you're going to say, well, here's a deal. We can make some money off of this. Let's lease what it should be, our exclusive area of usage. No, Your Honor. These leases that the railroad negotiates always contain provisions that give the railroad the right to tell them to leave on 30 days' notice if the railroad needs to build a sidetrack that is utterly incompatible with what they are doing. But this lease serves critical railroad interests. This lease has them promise that they're not going to contaminate the right-of-way with hazardous materials. It has them promise that they'll take appropriate care, that they'll maintain appropriate insurance. The railroad is responsible for what happens in these rights-of-way. And against the backdrop that the railroad's preference, frankly, we didn't ask for this. The railroad would prefer that this right-of-way be clear and unobstructed. The railroad is trying to accommodate them by letting them remain on terms and conditions that mitigate the risk and expense that their presence is imposing on the railroad. In the Pulet case- I'm sorry, go ahead. Well, in the Pulet case in 1988, I think the Nevada Supreme Court explained this really well. The equities in these encroachment cases are not on the side of the landowners. If you have taken it upon yourself to come into a corridor that, under absolutely settled law, is dedicated to the railroad's use, to do something for purely private benefit, and thereby you're imposing risk and expense, you should pay the cost of that, not the traveling and shipping public. Two questions. What do you do with Brandt? I mean, how does that impact what you're telling me now? Your Honor, I don't think Brandt is inconsistent in any way with all of that settled law. All that the Supreme Court did in Brandt was quote the Restatement Third of Servitude, Section 1.2, which describes all easements as non-possessory interests in land. And if you have no possessory interest in the land, and you have a right to use the land for railroad purposes, and you are not using the land for railroad purposes, then why are you entitled to exclude them from using the land? Your Honor, the Restatement says in the main text that all easements are, by definition, non-possessory. But then it explains that what we mean by non-possessory in the main text is that the railroads didn't get the full fee, right? The railroad's usage rights are not unlimited. But the issue in this case is addressed in Comment C to that section of the Restatement, which is about whether and when easements can grant exclusive rights to the right of way. And Comment C says that there is a spectrum. And despite the fact that all easements are non-possessory, easements can, in fact, be exclusive. And they can be so exclusive as to authorize the exclusion of the fee owner entirely from the right of way property. I understand that that's a restatement. But I understood Brandt to move away from some notion that you could have exclusive easements of that sort. I mean, if you look at that in juxtaposition to Justice Sotomayor's view about the muscular view of what an easement is as it relates to railroads, that was rejected by members of the court. This is very important, Your Honor. I'm glad you asked that. So the Brandt trust decision doesn't say anything about exclusivity. It's about what happens at abandonment. The court didn't reject the old cases that Justice Sotomayor relied on that say that they could be She said they rejected those cases. She thought so, Your Honor, but she was mistaken. OK, well. She was, Your Honor. So the Supreme Court on page 102 of the decision says that the dispute in this case is about whether the 1875 Act granted an easement or something more than an easement. That had to be the dispute because what the United States was asking for, the reversionary interest that they wanted, is only ever a characteristic of a fee interest. No easement known to the law ever conveys a reversionary interest in somebody other than the fee owner. The easement rule is absolute that when an easement is abandoned, it merges with the fee. So the Supreme Court recognized that for the government to get what it wanted in the Brandt trust case, it had to establish that the 1875 Act granted more than easements. Now, Justice Sotomayor cited a bunch of old cases about the exclusivity of railroad easements, which has been the law for 150 years, unchallenged. And the court then made the unwarranted leap from those exclusivity cases to say that because railroad easements have special exclusivity characteristics, they are therefore maybe not really easements, maybe something closer to a fee that would support the reversionary interest that the government was arguing for. And the Supreme Court rejected that for really precisely the reason that the restatement explains. Easements can be absolutely exclusive. There's nothing inconsistent. I didn't understand the Supreme Court to engage with Justice Sotomayor's dissent at all and it did not specifically on her claim that they had rejected those cases that she cited. I understood the Supreme Court to be engaging by explaining that the dispute in the case has to be whether this is an easement or something more than an easement. Justice Sotomayor was suggesting that because railroad easements have always had this special exclusivity characteristic, that therefore I'm going to agree with the government that it's not really an easement. And my point is the restatement explains why Justice Sotomayor was wrong. The fact that it is exclusive doesn't mean it's not an easement. It just means that it is the particular kind of easement that railroad rights are labeled. The fact that it's exclusive, does that mean that the railroad has a possessory interest? No, Your Honor. Now, I understand that it's easy to get tangled up in this. The restatement that the third, that the Supreme Court was quoting. Well, if you don't have a possessory interest, how can you lease the property? Well, Your Honor, I don't think it matters whether you call it a lease or a license or something else. In the Grand Trunk Railway case, the Supreme Court decided in 1875, the agreement between the railroad and the sawmill was called a license, not a lease, as a technical matter. The point is the railroad's- We have a lease, right? We called it a lease. You called it a lease. We called it a lease. I'm not sure that that's- And one assumes when one leases property that one has ownership or some major interest in the property. So you can't lease it for other people's use. Well, actually, Your Honor, the common law rule has always been different, that you don't have to deliver the right to possession in a lease. You just have to sign a lease. And if the person is actually put in possession- What rights do you have to have as a lessor? Well, none, Your Honor. You and I could sign a lease whereby I lease you the Brooklyn Bridge. And that would be a valid lease, as long as you- If you're leasing property, do you have to have an interest in the property to lease it? And what kind of interest? You don't, Your Honor. You don't? Actually, the common law has been opposite for 400 years. A lease makes no promises about the landlord's specific rights in the property. A lease puts the- So to be clear, you're saying the railroad has no possessory interest in the land that's leased here? I was trying to explain the terminological debate, Your Honor. So the way that the restatement third uses the word non-possessory, the railroad has no possessory interest. The restatement says, by definition, no easement in the world is possessory. And everyone agrees that this is an easement. Now, Your Honor can find older sources that use the word possessory in a different way and say that exclusive easements are possessory interests. The debate is entirely semantic. Well, it has tremendous significance in terms of the outcome of this case. Because if I understand you correctly, what you're suggesting or what you're saying is that you have an exclusive easement, which the common law recognizes, which the restatement recognizes. And because you have an exclusive easement, you can license their ability to use your right-of-way. And you have the right to exclude them if they won't comply with the license. Well, those are separate questions, whether we have the right to exclude them and whether we have the right to license what they're doing. The railroad's right to insist that the right-of-way remain clear and unobstructed is unchallenged and clear from 150 years of precedent. Now, there is some question in these railroad purpose cases about under what circumstances the railroad can authorize a third party to come onto the right-of-way and do something else. And then the railroad needs a railroad purpose sometimes to authorize that. But I just want to be clear, we didn't invite them onto this right-of-way. This is their incursion onto the right-of-way. The only thing the railroad has done here is try to accommodate their unlawful incursion by wrapping it in contractual terms that mitigate the risk and expense that they are unlawfully imposing on the railroad. And clarify for me, then, you said that the whole question of exclusion is different from whether you could license them. I mean, if they violate your license, couldn't you then say, get off? Because, well, isn't that exclusion? Absolutely, Your Honor. The railroad's right to insist that the right-of-way remain clear and unobstructed is absolute. And if Your Honor wants to rule that the railroad does not have the right to license or approve their presence, then the obvious outcome of that is that they would have to leave. That's not what the railroad wants, though. The railroad wants to be a good neighbor and be accommodating about this. But under- The railroad wants everything. They want to continue leasing. But then they want exclusive right-of-way. But Congress set aside this right-of-way forever and exclusively to railroad uses. The railroad doesn't want to have to kick- Congress hasn't said anything about this leasing business, though, has it? Well, Your Honor, if you take the restatement thirds approach, this would be a question of the divisibility of the railroad's easement under Section 5.9 of the restatement. And the question would be whether this division unreasonably increases the burden on the serving interstate of the easement. And the answer is opposite. This division reduces the burden on the serving interstate of this easement. It's for their benefit. Thank you. Thank you, Your Honor. Three quick points, so I might begin with the simplest one. Judge Holmes, I gave you the incorrect site. Appendix 1475 is the final summary judge of motion. I gave you the wrong date. That was actually in July of 17, but 1475. Second, Judge Briscoe, your question, and I think they made an extraordinary statement here, that they've used it all 200 feet. That's contrary to their own admission. Page 801 is an admission they made in response to, we say that they've only used the 66 feet inside the fenced area. They say admitted, but irrelevant, because we have the right to use this. Finally, the fundamental point of a lease is you need a possessory interest. You can't lease what you don't possess. I can't lease the Brooklyn Bridge because I don't possess it. They have no more possessory interest in this land than I do. And they're saying that's semantic, and in fact, what you have is a license. Yeah, and I don't think it should be semantics, because the lease is possession. That's what they did. They don't have a right to possess, and under the restatement, if they truly have a right to exclude from all 200 feet, and we have no rights in the property, then they no longer have an easement. They have a fee, and that's 1.2D of the restatement third, and it's right on point. And so we ask this court to affirm in part, but remand on the restitution issue. Thank you very much. Thank you both for your arguments, and it's, no, it's.